DAE WOO KIM, Plaintiff,

v.

CITY OF NEW YORK, Defendant.

No. 90 Civ. 1487 (KMW).

United States District Court, S.D. New York.

Sept. 12, 1991.

Dae Woo Kim, pro se.

Robin Rossenfield, Victor A. Kovner, Corp. Counsel, New York City, for defendant.

## MEMORANDUM OPINION

KIMBA M. WOOD, District Judge.

Plaintiff filed a complaint *pro se* on March 8, 1990, alleging that defendant, by

its police officers, violated plaintiff's constitutional rights, harassed him, and subjected him to numerous false arrests in connection with his attempts to preach through use of an amplifier on a public sidewalk.[1] Plaintiff's claims arise out of several incidents occurring between October 1988 and June 1990. At various times during that period, New York City police officers issued summonses to plaintiff, arrested him, and seized his amplification equipment, charging him with disorderly conduct by blocking pedestrian traffic and making unreasonable noise, in violation of N.Y.Penal Law § 240.20,[2] and operating a sound amplification device without a permit, in violation of New York City Noise Control Code ("Noise Code") § 24–220.[3]

On June 11, 1990, after a three day bench trial, the court issued from the bench its preliminary opinion finding in favor of defendant on all but one of plaintiff's claims. In that opinion, the court found that New York Penal Law § 240.20 is constitutional. The court also found that Noise Code §§ 10–108 and 24–220 are constitutional because both are content neutral, narrowly tailored to serve a significant government interest, and leave ample alternative channels for communication. In addition, the court found that defendants did not violate plaintiff's First Amendment rights in applying these ordinances. As a result, the court held, plaintiff did not demonstrate that defendants had engaged in a pattern of violations of his rights, and thus did not satisfy his burden of proof under 42 U.S.C. § 1983. The court similarly found that defendants did not violate plaintiff's Fourth Amendment rights, because each time they arrested him they had probable cause to do so,

**1.** Plaintiff also moved for a temporary restraining order and a preliminary injunction. On March 9, 1990, the court issued a temporary restraining order enjoining defendant from interfering with plaintiff's preaching with amplification unless defendant could demonstrate to the court that such interference was lawful. The temporary restraining order was subsequently extended on consent to remain in effect until trial.

**2.** The Noise Code is codified in Chapter 2 of Title 24 of the New York City Administrative Code and Charter. Noise Code subchapter 1, § 24–203(aaa) defines unnecessary noise:

Unnecessary noise means any excessive or unusually loud sound or any sound which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of a person, or which causes injury to plant or animal life, or damage to property or business.

Noise Code subchapter 3, § 24–218 states the general prohibition against unnecessary noise:

**General prohibitions.** No person shall make, continue or cause or permit to be made or continued any unnecessary noise.

Noise Code subchapter 4, §§ 24–219 through 24–230 sets forth rules prohibiting several specific types of noise. It provides, in pertinent part:

§ 24–219 **Violations of.** Any act in violation of the provisions of this subchapter of this code is deemed to be in violation of subchapter three of this chapter of this code, without in any way limiting the generality of the provisions of subchapter three of this chapter of this code.

§ 24–220 **Sound reproduction devices.** (a) Except as provided in section 10–108 of the code, no person shall operate or use or cause to be operated or used any sound reproduction device in such a manner as to create any unnecessary noise.

Section 10–108(d) of the New York City Administrative Code and Charter bars the use of sound amplification devices for noncommercial purposes "in, on, near or adjacent to any public street, park or place, unless such person shall have first obtained a permit ..." (a "§ 10–108 Permit"). Section 10–108 Permits specify the time, place and maximum level of amplified sound, and may be obtained from the police commissioner at a cost of five dollars per day.

**3.** New York Penal Law § 240.20 provides:

A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof:

1. He engages in fighting or in violent, tumultuous or threatening behavior; or
2. He makes unreasonable noise; or
3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or
4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or
5. He obstructs vehicular or pedestrian traffic; or
6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or
7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose. Disorderly conduct is a violation.

New York Penal Law § 240.20 (McKinney 1989).

given that plaintiff was violating city ordinances on each occasion.

In its June 11, 1990 opinion, the court reserved decision on the constitutionality of § 24–218, a statute that plaintiff was charged with violating on one occasion. By order dated July 2, 1990, the court directed the parties to submit additional briefs on the questions the constitutionality of § 24–218. For the reasons stated below, the court finds that § 24–218 is unconstitutionally vague and overbroad, and accordingly amends its preliminary opinion to find in favor of plaintiff on his claim pursuant to 42 U.S.C. § 1983 regarding the April 5, 1990 summons.

## Discussion

### I. Standing

■ It is well settled that a person challenging an overly broad statute on First Amendment grounds may do so without being required to demonstrate that his own conduct " 'could not be regulated by a statute drawn with the requisite narrow specificity.' " *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965)); *see, e.g., City of Houston v. Hill*, 479 U.S. 1079, 107 S.Ct. 1277, 94 L.Ed.2d 137 (1987); *Board of Airport Comm'rs v. Jews for Jesus*, 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987). Accordingly, plaintiff has standing to challenge § 24–218 as overbroad, even though his conduct on April 5, 1990 also violated § 24–220, which suffers from no constitutional infirmity. *See* June 11, 1990 opinion, 1990 WL 83465; *see generally*, Fallon, *Making Sense of Overbreadth*, 100 Yale L.J. 853 (1991). Similarly, plaintiff has standing to challenge § 24–218 as impermissibly vague. *See Grayned v. City of*

*Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

■ Defendant argues that the constitutionality of § 24–218 is not at issue because the notice of violation was issued after plaintiff filed his complaint, and plaintiff never moved to supplement his complaint to assert claims based on this violation. According to defendant, evidence regarding summonses that were issued after plaintiff's complaint was received at trial only for the limited purpose of determining whether the City had violated the court's March 9, 1990 temporary restraining order. The record reflects, however, that plaintiff orally requested permission to supplement his complaint with claims regarding summonses issued after he filed his complaint, and that the Court granted this request. At a hearing held May 17, 1990, plaintiff asked the court whether, in his pre-trial submissions, he could add subsequent incidents in which the Transit Police and the City Police improperly arrested him for preaching. Transcript of May 17 Hearing ("May 17 Tr.") at 40–42, 45–46. The court informed plaintiff that he should submit a letter to the court regarding such incidents, and that he could "add that so long as it is something that happens before June 1st." [4] May 17 Tr. at 41.

Consistent with the court's direction, on May 25, 1990 plaintiff filed his "Supplement for Plaintiff's Draft Pretrial Order," alleging that the City Police had continued to violate his constitutional rights, referring to attached copies of several summonses he had recently received, including the April 5, 1990 notice of violation, which charged plaintiff with violating § 24–218. In light of plaintiff's *pro se* status, the court holds that plaintiff effectively supplemented his complaint to assert claims based on the April 5, 1990 notice of violation. *See Haines v. Kerner*, 404 U.S. 519,

---

4. When the court first told plaintiff that he could add claims regarding any summonses issued prior to June 1, the court was under the mistaken impression that plaintiff was referring only to summonses issued by the City Police, rather than the Transit Police. May 17 Tr. at 40–42. When the court became aware that plaintiff was referring both to summonses issued by the City Police and to summonses issued by the Transit Police, the court informed plaintiff that his claims against the Transit Police would not be adjudicated at this trial, because plaintiff had not named the Transit Police as defendants, and that the trial would be limited to plaintiff's claims against the City Police. May 17 Tr. at 42, 45–46.

520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (filings of pro se litigants should be interpreted liberally).

## II. Constitutionality of § 24–218—Vagueness and Overbreadth

In determining whether a statute is vague or overbroad, " 'a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.' " *Dorman v. Satti*, 862 F.2d 432, 436 (2d Cir.1988) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)), *cert. denied*, 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989); *see Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2917 (statute will not be struck down merely because it can conceivably apply to protected activities; "act's overbreadth must not only be real but substantial as well, judged in relation to the statute's plainly legitimate sweep.") Here there is no question that § 24–218, broadly barring any form of unnecessary noise, extends by its terms to all oral communication, and thus reaches a substantial amount of activity protected by the First Amendment.

### A. *Vagueness*

Defendant argues that § 24–218 is not unconstitutionally vague because, where, as here, plaintiff was charged with making unreasonable noise by a sound amplification device, § 24–218 must be read as limited by § 24–220.[5] That is, defendant argues that the Noise Code must be construed to mean that a person could not violate § 24–218 if he were using his sound device within the bounds of a § 10–108 Permit.

An analysis of the language of the relevant statutory provisions, however, belies defendant's reading. Section 24–219 of the Noise Code provides that any act in violation of the various specific prohibitions on unnecessary noise set forth in subchapter 4 of the Noise Code, including § 24–220, will be considered violations of § 24–218. The final phrase of § 24–219 adds a catchall provision that ensures that the provisions of § 24–219 act "without in any way limiting the generality" of § 24–218, the section containing the general unnecessary noise prohibition. Noise Code § 24–219. In other words, according to the plain words of the relevant provisions of the statute, a person may violate the general provision of § 24–218, even if he has a permit and is thus not in violation of the specific provisions of § 24–220. Whatever measure of protection the permit provision of the Noise Code affords, the broad wording of § 24–219 essentially overrides that protection. While defendant's reading of § 24–218 as limited by § 24–220 may be largely consistent with the way in which defendant enforces the relevant ordinances, the narrowing construction urged by defendant is directly at odds with the clear wording of the Noise Code.

Defendant's argument is further undermined by a decision of the New York Court of Appeals construing a nearly identical noise ordinance of the Town of Poughkeepsie, in which the court specifically declined to adopt a narrowing construction that would have saved the ordinance from being struck down. In *People v. New York Trap Rock Corp.*, 57 N.Y.2d 371, 456 N.Y.S.2d 711, 442 N.E.2d 1222 (1982), defendant quarry operator was convicted of violating § 3.01 and § 3.02(e) of the town's Unnecessary Noise Control Ordinance ("the Poughkeepsie Noise Ordinance")[6] by loading a

---

**5.** Defendant makes the same argument regarding overbreadth.

**6.** The Poughkeepsie Noise Ordinance defines unnecessary noise as:

> Any excessive or unusually loud sound or any sound which annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of a person or which causes injury to animal life or damages to property or business ...

Poughkeepsie Noise Ordinance § 2. Section 2 then states ten nonexclusive standards to be considered in determining whether unnecessary noise exists in a given situation. Section 3.00 of the Poughkeepsie Noise Ordinance provides:

> Any act or violation of any of the provisions of this ordinance is deemed to be in violation of Section 3.01 of this ordinance without in any way limiting the generality of the provisions of Section 3.01 of the Ordinance.

Section 3.01 provides:

truck so as to create unnecessary noise. The structure of the Poughkeepsie Noise Ordinance was precisely the same as the Noise Code, with § 3.01 providing a general prohibition against unnecessary noise, and § 3.02 setting forth prohibitions against specific types of unnecessary noise, with the proviso that any act in violation of any of the specific noise prohibitions "is deemed to be in violation of Section 3.01 of this ordinance *without in any way limiting the generality* of the provisions of Section 3.01 of the Ordinance." Poughkeepsie Noise Ordinance § 3.00 (emphasis added). The New York Court of Appeals held that the ordinance was unconstitutionally vague and "not remediable by a narrowing construction." 57 N.Y.2d at 381, 456 N.Y.S.2d 711, 442 N.E.2d 1222. Only the New York Court of Appeals may authoritatively construe state and local laws; this court may not adopt a narrowing construction for § 24–218 where the New York Court of Appeals has declined to do so in virtually identical circumstances.[7] *See Grayned v. City of Rockford*, 408 U.S.

at 111, 92 S.Ct. at 2300 (noting Court's lack of power to "construe and narrow state laws"); *United States v. Thirty–Seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971); Tribe, American Constitutional Law (2d Ed.1988) § 12–30 (reviewing court may not substitute its own saving interpretation of state statute for that authoritatively given by state's highest court).

A statute is unconstitutionally vague if it lacks clear definition or explicit standards such that it does not give a person of ordinary intelligence an opportunity to know what is prohibited. *Dorman*, 862 F.2d at 436; *Grayned*, 408 U.S. at 108–09, 92 S.Ct. at 2298–99. Where, as here, the ordinance in question is applicable to protected expression, a greater degree of specificity is required than in other contexts. *See, e.g., Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974).

Analyzing the statute as written, without the narrowing construction proposed by the

No person shall make, continue or cause or permit to be made or continued any unnecessary noise. Non-commercial public speaking and public assembly activities conducted in any public space shall be exempt from the operation of this Section.

Section 3.02 provides, in pertinent part:
The following acts, and the causing thereof, are declared to be in violation of this ordinance but any enumeration herein shall not be deemed to be exclusive:

. . . . .

(e) the loading or unloading of any vehicle . . . in such a manner as to create unnecessary noise at the adjoining property line. . . . Without limiting the above language, it shall be a violation of this ordinance to load or unload any vehicle . . . between the hours of 11:00 P.M. and 7:00 A.M. within 300 feet of the boundary line of a residential district . . . so as to create unnecessary noise at the adjoining property line. . . .

**7.** Defendant argues that in *New York Trap Rock* the New York Court of Appeals could not adopt the narrowing construction defendant proposes here because the defendant in *New York Trap Rock* had been convicted on a separate count of violating § 3.01 but had been found not guilty of violating § 3.02(e); thus, construing § 3.01 as limited by § 3.02(e) would have forced the New York Court of Appeals to overturn defendant's

conviction pursuant to § 3.01. Defendant's Memorandum of Law at 10. Defendant's reading of the Court of Appeals's decision, however, is not entirely accurate. The defendant in *New York Trap Rock was* found guilty of violating that portion of § 3.02(e) relating to making unnecessary noise at the adjoining property line; defendant was found not guilty only with respect to the portion of § 3.02(e) specifically referring to loading within 300 feet of a residential district. 57 N.Y.2d at 376, 456 N.Y.S.2d 711, 442 N.E.2d 1222. Moreover, even if the New York Court of Appeals would have been forced to overturn defendant's conviction pursuant to § 3.01, it could nevertheless have adopted a narrowing construction so that § 3.01 could be constitutionally applied to future cases.

Defendant might have argued that § 3.02(e) of the Poughkeepsie Noise Ordinance, unlike § 24–220 of the Noise Code, does not provide a safe harbor from its unnecessary noise prohibitions for individuals acting within the bounds of a permit. *Accordingly, the saving construction* urged by defendant for § 24–218 would have been more difficult to craft for § 3.01 of the Poughkeepsie Noise Ordinance in *New York Trap Rock.* Nevertheless, in light of the plain language of § 24–219 of the Noise Code, and the New York Court of Appeals's failure even to attempt to save § 3.01 in *New York Trap Rock*, the court declines defendant's invitation to, in effect, rewrite the Noise Code.

defendant,[8] Section 24–218 does not provide any standard to aid in determining when particular noise is "unnecessary." Indeed, it provides citizens with even less of a guide to what conduct it prohibits than the Poughkeepsie Noise Ordinance held unconstitutionally vague in *New York Trap Rock*.[9] Further, by its disjunctive wording, § 24–218 prohibits "any sound which annoys . . . the . . . repose . . . of a person." Noise Code § 24–203(aaa). Because it provides only this subjective standard, the conduct barred by § 24–218 will vary with the listener. Section 24–218's broad terms and lack of objective standards invite the arbitrary and discriminatory enforcement that the vagueness doctrine is designed to avoid. *Id.* 57 N.Y.2d at 381, 456 N.Y.S.2d 711, 442 N.E.2d 1222; *see Grayned*, 408 U.S. at 108, 92 S.Ct. at 2298. It was precisely this type of subjectivity that the Court of Appeals found so disquieting in *New York Trap Rock.* 57 N.Y.2d at 380, 456 N.Y.S.2d 711, 442 N.E.2d 1222. As the Court of Appeals warned, the statute as written "impermissibly would support a conviction on any sound which annoys another person, for it could rest solely upon the 'malice or animosity of a cantankerous neighbor,' or 'boiling point of a particular person,' situations which are the product, not only of imprecise standards, but of no standard at all." *New York Trap Rock*, 57 N.Y.2d at 380, 456 N.Y.S.2d 711, 442 N.E.2d 1222 (citations omitted). Accordingly, consistent with the New York Court of Appeals holding regarding the nearly identical § 3.01 of the Poughkeepsie Noise Ordinance, the court holds that Noise Code § 24–218 is unconstitutionally vague, and "not remediable by a narrowing construction." *Id.* ("[t]his section is permeated with vagueness"); *see also Jim Crockett Promotion, Inc. v. City of Charlotte*, 706 F.2d 486, 489 (4th Cir.1983) (portion of noise ordinance barring "unnecessary"

noise is unconstitutionally vague); *Fratiello v. Mancuso*, 653 F.Supp. 775, 790 (D.R.I.1987) (ordinance barring "unnecessary noises . . . which are physically annoying to persons, . . . or which are injurious to the lives, health, peace and comfort of the inhabitants of the city" is unconstitutionally vague).

### B. *Overbreadth*

■ A statute is unconstitutionally overbroad if it includes within its prohibitions constitutionally protected conduct. *Grayned*, 408 U.S. at 114, 92 S.Ct. at 2302. Here, because § 24–218 restricts constitutionally protected oral communication, it must be content neutral, narrowly tailored to serve a significant state interest, and allow for ample alternative channels of communication. *See, e.g., Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988).

A statute is narrowly tailored if it "targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby*, 108 S.Ct. at 2502; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 2758, 105 L.Ed.2d 661 (1989). The stated intent of the Noise Code is to "reduce the ambient noise level in the city. . . ." Noise Code § 24–202. By barring noise that is "unnecessary" because it "annoys" or "disturbs" others, however, § 24–218 bars sounds regardless of their volume level; by its terms, the ordinance would apply to speech delivered in a moderate tone, or even a whisper, so long as it annoys another person. Section 24–218's subjective definition of unnecessary noise offends basic free speech principles because it would support a conviction where the content of the speech annoys a particular listener. *See N.Y. Trap Rock*, 57 N.Y.2d at 380, 456 N.Y.S.2d 711, 442 N.E.2d 1222; *Cohen v. California*, 403 U.S. 15, 21, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284 (1971); *see also Fratiello*, 653 F.Supp.

---

**8.** Defendant does not argue that § 24–218 is constitutional if considered separately from § 24–220.

**9.** Defendant attempts to distinguish *N.Y. Trap Rock*, arguing that § 24–218 is subject to a lesser level of constitutional scrutiny because violation thereof subjects an individual only to civil,

rather than criminal penalties. Defendant is wrong. Section 24–269(e) of the Noise Code subjects a first-time violator of "any of the provisions of this code," including § 24–218, to a criminal penalty of up to a five hundred dollar fine and twenty days imprisonment. Noise Code § 24–269.

at 791 (holding "unnecessary noise" ordinance overbroad). Accordingly, the court holds that § 24–218 is not narrowly tailored to meet a significant government interest, (the test for valid time, place, or manner restriction on speech), and is thus unconstitutionally overbroad.

### Conclusion

 Because the court finds that Noise Code § 24–218 is unconstitutional, the court modifies its June 11, 1990 opinion and finds in favor of plaintiff on his claim pursuant to 42 U.S.C. § 1983 regarding the April 5, 1990 notice of violation.

Having prevailed on a portion of his § 1983 claim, plaintiff is entitled to recover damages. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). At trial, however, plaintiff did not adduce any evidence of actual damages. The Supreme Court has held that a plaintiff who suffers a deprivation of a constitutional right but who is unable to prove actual damages is entitled to recover nominal damages as a means of vindicating that right. *Id.; Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *see also Fassett v. Haeckel,* 936 F.2d 118 (2d Cir.1991) (law in this circuit is that Supreme Court decisions *require* courts to award nominal damages to § 1983 plaintiffs where plaintiff proves deprivation of an absolute right but has not proven compensatory damages). Here, evidence at trial concerning plaintiff's repeated failure to comply with the valid permit requirements of the Noise Code and the hardship plaintiff's actions imposed on others bolster the court's belief that only nominal damages are appropriate on this claim. Accordingly, the court awards plaintiff one dollar ($1) on this claim. In all other respects, the court adheres to its June 11, 1990 opinion, and thus dismisses with prejudice all of plaintiff's other claims. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.